UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, a nonprofit organization; PHIL BEDER, an individual; MILAGROS FRANCO, an individual; and EDITH PRENTISS, an individual, on behalf of themselves and all others similarly situated, | No. 17-cv-1923 |
| | |
| Plaintiffs, | **COMPLAINT** |
| -against- | |
| NEW YORK STATE OFFICE OF PARKS, RECREATION AND HISTORIC PRESERVATION; ROSE HARVEY in her official capacity as COMMISSIONER OF PARKS, RECREATION AND HISTORIC PRESERVATION; and FOUR FREEDOMS PARK CONSERVANCY | |
| Defendants. | |

## INTRODUCTION

1.      This class action lawsuit seeks to rectify the systemic, discriminatory exclusion of persons with mobility disabilities from full and equal access to the Franklin D. Roosevelt Four Freedoms Park ("FDR Memorial"), New York City's recently built monument commemorating our 32nd President.

2.      Its inaccessibility is particularly stunning in light of the fact that the construction on the FDR Memorial began in late 2010, with the opening taking place on October 24, 2012, decades after the federal, state, and city disability laws clearly established that places of public accommodation may not discriminate against persons with disabilities.

3.      Such blatant violation of disability law is tragically ironic in light of the fact that President Roosevelt himself used a wheelchair for mobility after becoming paralyzed from polio at the age of 39.

4.      The inaccessibility commences right at the very entrance to the central area of the FDR Memorial, with a flight of approximately 22 stairs, at the top of which is a grassy, tree-lined avenue providing a panoramic view of Manhattan and Queens and leading dramatically to a bust of President Roosevelt.  Because no ramps are provided alongside the stairs, wheelchair users must travel along lower-level paths routed around the main monument.  These paths are constructed of paving stones that need major grouting maintenance, leaving them uneven and extremely unpleasant even for power chair users, and especially challenging for visitors relying on manual chairs, walkers and rollators.

5.      To actually reach the area that affords this panoramic view, moreover, wheelchair users must travel to the very end of the long, uneven path to the southernmost portion of the FDR Memorial, and then turn around to go up an incline, in order to travel back to the top of the stairs in the entrance area. The path back leads over either grass or loose gravel, and is thus even more arduous than the previous route.

6.      The FDR Memorial's inaccessibility extends to its final feature, a 12-by-60-foot sunken terrace that juts out from an open-air enclosure known as the Room. Located on the southernmost end of the FDR Memorial, this terrace enhances the view of the East River.

7.      The sunken terrace can only be accessed using steps on either side of the Room. As a result, it is entirely inaccessible to visitors with mobility disabilities who use scooters, wheelchairs and other assistive devices for movement.

8.      Lastly, the gift shop at the FDR Memorial is inaccessible and the bathroom is not ADA compliant, reinforcing the conclusion that the entire site was constructed with little regard for the rights of the members of the disability community, many of whom look upon President Roosevelt as their role model and hero.

9.      All these pervasive and undeniable architectural barriers, which literally stretch from the beginning to the end of the FDR Memorial and were entirely avoidable during planning and construction, constitute a clear violation of disability access laws. For over 30 years, first under Section 504 of the Rehabilitation Act of 1973, and later under the Americans with Disabilities Act as well as under state and city disability law, entities like Defendants have been under an affirmative obligation to ensure that persons with disabilities are able to access places of public accommodation on equal terms with everyone else.

10.      Plaintiffs have exhausted their efforts to resolve this issue without litigation.  On August 4, 2016, Plaintiffs contacted Defendants to request that Defendants commit to remedying the FDR Memorial's inaccessibility. Plaintiffs also offered to participate in structured settlement negotiations to discuss proposed improvements.  Because Defendants failed to answer Plaintiff's letter, Plaintiffs were forced to file this Complaint.

11.      Plaintiffs sue on behalf of themselves and persons with mobility disabilities who are being discriminated against by virtue of their exclusion from visiting the FDR Memorial.

## **JURISDICTION**

12.       This is an action for declaratory and injunctive relief, brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; the New York State Human Rights Law ("NYS HRL"), N.Y. Exec. Law § 290,

*et seq.*; and the New York City Human Rights Law ("NYC HRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504, and supplemental jurisdiction over the NYS HRL and NYC HRL claims pursuant to 28 U.S.C. § 1367.

14.     Moreover, this Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

15.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because Defendants are located within this District. Moreover, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

16.     Brooklyn Center for Independence of the Disabled ("BCID") is a consumer-based, non-profit independent living center that provides services and advocacy toward independent living for persons with disabilities throughout the City of New York.  The majority of BCID's board members and staff are persons with disabilities, including mobility-related disabilities.

17.     Each year, BCID serves approximately 1400-1700 persons with disabilities. Moreover, BCID has approximately 50 support-group members and peer counselors; many have mobility disabilities that require the use of wheelchairs, walkers, scooters or other assistive devices.

18.     BCID's mission is to ensure full integration, independence and equal opportunity for all people with disabilities. BCID strives to accomplish this goal by removing barriers to the

disabled persons' full and equal participation in the social, economic, cultural, and civic life of the community. Safeguarding access to every area of the City is a key component of this mission.

19.    Since its inception, BCID has worked to ensure that each area of the City is accessible for persons with disabilities. Among other things, BCID has advocated to remedy the inaccessibility of the City's police stations, sidewalks, and emergency shelters.

20.    The continued inaccessibility of the FDR Memorial is thus an issue of concern for BCID. A number of BCID's constituents wish to visit and enjoy the FDR Memorial just as visitors without disabilities are able to. Moreover, BCID is concerned that, unless the access issue is remedied, a precedent may be set whereby the City's future buildings will likewise be built without regard for ADA compliance. Disregard for the ADA's mandate to ensure accessibility of the City's public areas would undoubtedly divert BCID's scant resources away from the programs that seek to alleviate its constituents' numerous other needs. Such disregard, moreover, clearly frustrates BCID's mission of integrating people with disabilities into the City's community life on an equal and independent basis with everyone else.

21.    Due to this immediate and strong interest in the FDR Memorial's accessibility, BCID has standing to sue both on behalf of its members and constituents and on behalf of itself. Because BCID's claims are limited to injunctive and declaratory relief, individual members' participation is unnecessary.

22.    Milagros Franco is a qualified person with a disability under all applicable statutes.  As a person who uses a wheelchair and who wishes to visit the FDR Memorial, Ms. Franco has been significantly impacted by the FDR Memorial's inaccessibility. Given that Ms. Franco will continue to wish to visit the FDR Memorial, she is certain to continue to suffer from

the ongoing exclusion and/or second-class treatment of visitors with mobility disabilities from this popular location.

23.    Edith Prentiss is a qualified person with a disability under all applicable statutes. As a person who uses a wheelchair and who wishes to visit the FDR Memorial, Ms. Prentiss has been significantly impacted by the FDR Memorial's inaccessibility. Given that Ms. Prentiss will continue to wish to visit the FDR Memorial, she is certain to continue to suffer from the ongoing exclusion and/or second-class treatment of visitors with mobility disabilities from this popular location.

24.    Phil Beder is a qualified person with a disability under all applicable statutes.  As a person who uses a wheelchair and who wishes to visit the FDR Memorial, Mr. Beder has been significantly impacted by the FDR Memorial's inaccessibility. Given that Mr. Beder will continue to wish to visit the FDR Memorial, he is certain to continue to suffer from the ongoing exclusion and/or second-class treatment of visitors with mobility disabilities from this popular location.

25.    Defendant New York State Office of Parks, Recreation and Historic Preservation is a subsidiary agency of the New York State Executive Department whose mission is to manage all parks and historic sites within New York State. The legal authority to accomplish this mission is vested in Defendant under the New York Parks, Recreation and Historic Preservation Law § 3.03 *et seq*. Accordingly, Defendant qualifies as a "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(l) and 28 C.F.R. § 35.104.

26.    As a historic site and a park located within New York State, the FDR Memorial is clearly under the Defendant agency's jurisdiction.

27.     Rose Harvey, sued in her official capacity, is the Commissioner of Parks, Recreation and Historic Preservation. Pursuant to this authority, Ms. Harvey oversees all aspects of the FDR Memorial's management, including all access-related issues.

28.     Lastly, the Four Freedoms Park Conservancy ("the Conservancy") is a not-for-profit organization charged with operating and maintaining the FDR Memorial in collaboration with the New York State Office of Parks, Recreation and Historic Preservation. As a custodian of this public space, the Conservancy is subject to the requirements of ADA's Title III.

## CLASS ALLEGATIONS

29.     Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action, for injunctive and declaratory relief purposes only, on their own behalf and on behalf of all persons similarly situated.  The class that Plaintiffs seek to represent consists of all persons with mobility disabilities who visit or intend to visit the FDR Memorial.  The claims asserted herein are solely for injunctive and declaratory relief for the class; damages claims are not included in this complaint.

30.     The persons in the class are so numerous that joinder of all such persons is impracticable. The disposition of their claims in a class action is a benefit to the parties and to the Court.  Indeed, data from the United States Census American Community Survey conducted in 2014 indicates that more than 500,000 non-institutionalized New York City residents have a mobility-related disability. Hundreds of thousands of persons with disabilities, moreover, visit the City each year.

31.     Proposed class members share a well-defined community of interest with respect to both questions of law and fact involved because they are all being denied, or will be denied, access to FDR Memorial.

7

32.     One of the key common questions of law and fact involves Plaintiffs' allegations that Defendants have violated federal law by failing to provide equal access to the FDR Memorial for persons with mobility disabilities. Common questions also include whether the state and city law require the FDR Memorial to be accessible for persons with mobility disabilities, as well as what remedial scheme should be implemented to rectify the current lack of access.

33.     Plaintiffs are adequate class representatives because they, or the persons they serve, are directly impacted by Defendants' failure to provide equal access to the FDR Memorial. Moreover, Plaintiffs' claims are typical of the claims of the class as a whole because Plaintiffs are similarly affected by the FDR Memorial's inaccessibility.

34.     Plaintiffs' interests are not antagonistic, or in conflict with, the interests of the class as a whole. The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions for injunctive relief.

35.     By failing to secure accessibility of the FDR Memorial consistent with federal disability access laws, Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole. Accordingly, an award of appropriate final declaratory and injunctive relief with respect to the class as a whole is warranted in this case.

36.     References to Plaintiffs shall include each Plaintiff and each member of the class, unless otherwise indicated.

## FACTS COMMON TO ALL ALLEGATIONS

37.     The Franklin D. Roosevelt Four Freedoms Park is a Memorial located on Roosevelt Island in New York City. The FDR Memorial was designed by Louis Kahn in 1973 to commemorate Franklin Delano Roosevelt and the Four Freedoms speech he made during his 1941 State of the Union Address.

38.     Ground was broken on the FDR Memorial in 2010, and it opened to the public on October 24, 2012.

39.     As noted above, the entrance leading into the FDR Memorial's central area features a flight of approximately 22 stairs. At the top of the stairs awaits a grassy, tree-lined avenue from which the visitors can take in the panoramic view of Manhattan and Queens before heading down the equally scenic path towards President Roosevelt's bust and the most stunning view at the tip of the monument.

40.     To reach this grassy area, wheelchair users are forced to travel along the substantially lengthier uneven paths encircling the bottom of the grassy avenue. Because these paths feature paving stones that are in need of major grouting, travel across these uneven surfaces is exceedingly difficult for any wheelchair, walker or rollator user.

41.     The overall design of the area further compounds these difficulties by requiring wheelchair users to travel all the way to the finishing point of the uneven path almost to the FDR Memorial's southernmost end, then turn around, go up a steep incline along gravel paths or grass, and head all the way back towards the entrance area to reach the panoramic view afforded by the grassy avenue. The combined effect of the increased distance, uneven surfaces, and vertical incline makes the monument substantially inaccessible to those with mobility disabilities.

42.     Indeed, the walkways around the grassy avenue are generally difficult to access for visitors with mobility impairments. Because a metal honeycomb mesh is used to keep the walkways compact, the walkways' surface is covered with pea stones, making the resulting path incredibly uncomfortable for any person using a wheelchair or other mobility equipment.

9

43.     The southernmost end of the FDR Memorial features yet an additional set of accessibility barriers.

44.     In particular, this area contains a 12-by-60 foot sunken terrace, a design device built in order to enhance the view of the East River from the FDR Memorial's open-air enclosure known as The Room.

45.     The Room is surrounded by granite walls on three of its sides. The wall-free side at the tip of the monument is lower and offers an uninterrupted, barrier-free, stunning view of the East River.

46.     Because the terrace can only be reached by steps, it is entirely inaccessible to visitors with mobility disabilities.

47.     The original design anticipated that the FDR Memorial would serve as "a room and a garden." Since the terrace serves to enhance the view from "The Room," it is clear that it was intended to be a key part of the visitors' enjoyment and experience of the FDR Memorial. Its inaccessibility thus significantly diminishes the ability of the visitors with mobility disabilities to fully enjoy the FDR Memorial's beauty.

48.     Lastly, even the key accompanying components of the Memorial – namely, the bathroom and the gift shop - pose serious access issues for visitors with mobility disabilities. In particular, the bathroom features several difficult-to-access fixtures, including the sink and the toilet, while the gift shop features a stair at the entrance and very little room once inside, making it impossible to access for customers in wheelchairs.

49.     All these pervasive and inescapable accessibility barriers carry an especially symbolic irony given that President Roosevelt was himself a wheelchair user and indeed an active supporter of the disability community. Fifteen years prior to his Four Freedoms Speech,

President Roosevelt purchased Georgia's Warm Springs, a rehabilitation facility for people with polio. During his years in the White House, President Roosevelt regularly returned to visit the patients there, thereby showing that he considered himself an active supporter of that same community of people who are now excluded from visiting the FDR Memorial that has been built in his honor.

50.    The federal law unequivocally mandates that both public and private entities do not discriminate against people with disabilities in places of public accommodation. Since the FDR Memorial is undoubtedly a public site and therefore a place of public accommodation, its inaccessibility and the resulting exclusion of visitors with mobility disabilities constitutes a clear violation of that law.

51.    Particularly significantly, the timing of the FDR Memorial's construction raises serious concerns about the precedent that will be set if Defendants are absolved of their duty to make it accessible. As noted above, the construction of the FDR Memorial began in late 2010, two decades after the passage of the ADA. If it remains inaccessible, the precedent will be set whereby future architects will be free to design other public monuments and historic sites with zero regard for ADA compliance as long as they claim that the inaccessibility comprises an important aspect of their design or artistic vision. Such a development would serve to exclude countless future visitors with mobility disabilities from any number of public monuments, perpetuating the systemic, historic discrimination that the ADA was designed to eliminate.

## EXPERIENCES OF PLAINTIFFS

52.    BCID has constituents, staff, board members, and volunteers with mobility disabilities who seek to visit the FDR Memorial. These individuals have hoped to visit the FDR Memorial in the past but have been deterred from doing so because of Defendants' failure to make it accessible for persons with mobility disabilities.

53.    Ms. Prentiss's experiences visiting the FDR Memorial have been marred by the pervasive inaccessibility described above. During her last trip, which she took on Presidents' Day weekend, Ms. Prentiss experienced significant discomfort traveling alongside the substantially lengthier gravel path encircling the grassy avenue and the walkways. Gravel and pea stone-covered surfaces affected her travel so much that she was relieved when the path gave way to the stone surface on which the President's bust is located.

54.    Ms. Prentiss found it similarly difficult to have to turn around upon arriving at the very southernmost end of the FDR Memorial and wheel over a steep incline featuring gravel stones all the way back just to reach the top of the entering stairs and take in the panoramic view of two of the City's boroughs. The stones felt harsh and unstable, making her feel as if she might tip out of her wheelchair.

55.    In addition, when Ms. Prentiss reached The Room, she realized she had no way of descending onto the sunken terrace. She observed a number of visitors walking down the stairs leading to the terrace, exploring various sitting areas, and taking in the view of the East River, but could not partake in any of these activities herself due to the complete lack of ramps for wheelchair users.

56.    It was clear to Ms. Prentiss that the view from the terrace was superior to the view she could enjoy from her spot at the top of the stairs. Being relegated to remaining at the top of the stairs thus made her feel as if she were a second-class citizen, excluded from exploring an attractive feature of the FDR Memorial solely due to her disability.

57.    Topping off these disappointments, Ms. Prentiss struggled to access the bathroom due to the inappropriate height of fixtures such as the sink and the toilet. She likewise could not

enter the FDR Memorial's gift shop because the stair at the entrance completely barred access for customers in wheelchairs.

58.    Owing to these pervasive barriers, Ms. Prentiss visits the Memorial a lot less frequently than she might otherwise, as the inaccessibility significantly diminishes her visiting experience.

59.    Milagros Franco's experience visiting the FDR Memorial mirrors those of Ms. Prentiss. Like Ms. Prentiss, Ms. Franco encountered significant accessibility difficulties in the course of her visit, including the substantially lengthier and uncomfortable gravel path around the grassy avenue, the uncomfortable walkways and the inaccessible subsidiary features such as the gift shop and the bathrooms.

60.    Ms. Franco especially recalls observing a number of visitors walking down from The Room to the sunken terrace to explore both the space and its view of the East River but being unable to join them herself, thanks to the total lack of ramps.

61.    Because of this complete inaccessibility of one of the Memorial's most attractive features, Ms. Franco could only enjoy the view from the notably greater distance of The Room. She felt that the view afforded by the terrace was clearly superior, given that nearly every able-bodied visitor she noticed took the opportunity to go down to the terrace and observe the river from there.

62.    Ms. Franco had heard about the barrier-free, uninterrupted vista the terrace was intended to provide prior to visiting the FDR Memorial, and had greatly looked forward to experiencing it. The terrace's inaccessibility thus materially diminished her visiting experience. She returned home disappointed and angry that she had been unable to explore a key feature of

the FDR Memorial in the same way as the able-bodied visitors she had encountered in the course of her visit.

63.     Phil Beder has visited the FDR Memorial several times as well. As a volunteer with the Brooklyn Public Library where he teaches civics classes to new immigrants preparing to take their naturalization exams, Mr. Beder is an avid enthusiast for the history and work of President Roosevelt. The FDR Memorial has accordingly been of great interest to him ever since its opening.

64.     Mr. Beder recently visited the FDR Memorial together with his wife, despite hearing of its inaccessibility.  In common with other plaintiffs, he found it difficult to access from beginning to end thanks to the continuous obstacles stretching from the entering stairs all the way to the southernmost end with the sunken terrace.

65.     Mr. Beder was especially disappointed not to be able to descend onto the sunken terrace like other visitors he observed in the course of his visit. It had always been clear to Mr. Beder that the sunken terrace constitutes an integral feature of the FDR Memorial, and his last visit reaffirmed that conclusion. The existence of the staircase and the seating areas around the terrace all signaled clearly to him that the space had been intended to be explored and visited in its own right, completely apart from the view it affords of the East River. Indeed, Mr. Beder observed several visitors taking advantage of the seating areas to enjoy the terrace during his visit.

66.     Mr. Beder finds this inaccessibility deeply offensive, especially in view of President Roosevelt's own disability and lifelong dedication to the disability community.

### FIRST CAUSE OF ACTION
### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
#### (42 U.S.C. § 12131, ET SEQ.)

<u>**AGAINST DEFENDANT NEW YORK STATE OFFICE OF PARKS, RECREATION AND HISTORIC PRESERVATION**</u>

67.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

68.    Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

69.    The term "disability" includes physical and mental disabilities that substantially limit one or more major life activities.  *See* 42 U.S.C. § 12102(2).  A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *See* 42 U.S.C. § 12131(2).

70.    The Plaintiffs, the board members and constituents of the organizational Plaintiff, and the class are qualified persons with disabilities within the meaning of 42 U.S.C. §§ 12102, 12131 and 28 C.F.R. § 35.104 in that they have disabilities which substantially limit one or more major life activities, such as walking.  They are also qualified in that they have sought, or will seek, to visit the FDR Memorial.

71.    A "public entity" includes state and local governments, their agencies, and their instrumentalities. *See* 42 U.S.C. § 12131(1).  As an agency of the New York State Executive

Department, New York State Office of Parks, Recreation and Historic Preservation is a public entity within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

72.     Further, Title II likewise requires public entities, including defendant agency, to operate each of their programs, services or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." *See* 28 C.F.R. § 35.150; *see also* 28 C.F.R. §§ 35.149 & 35.151.  Defendant agency's management of the FDR Memorial clearly constitutes a program, service or activity under Title II.

73.     The pervasiveness of the above-described accessibility obstacles renders the FDR Memorial inaccessible as a whole. Defendant agency has accordingly failed in its duty to operate the FDR Memorial in a non-discriminatory manner, and is in violation of each of the above cited provisions of Title II.

74.     Further, Title II of the ADA requires that when a public entity newly constructs a facility, that facility must be made accessible to and usable by individuals with disabilities. *See* 28 C.F.R. § 35.151.

75.     Since the FDR Memorial's construction began in 2010, it is clearly a new entity within the meaning of 28 C.F.R. § 35.151. Accordingly, Defendants' failure to ensure its accessibility violates Title II's "newly constructed facility" provisions.

76.     Defendant's failure to ensure the FDR Memorial's accessibility through contractual, licensing and/or other arrangements and relationships also relegates visitors with disabilities to accessing the FDR Memorial on terms that are distinctly unequal to those afforded to able-bodied visitors. As a result, visitors with disabilities are receiving an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result or to gain

16

the same benefit as that provided to able-bodied visitors, in violation of 28 C.F.R. §
35.130(b)(1)(i)-(iii) and 28 C.F.R. § 35.130(b)(1)(v).

77.     Such inequality further indicates that the Defendants' operation of the FDR
Memorial, whether directly or through contractual or other arrangements, has involved utilizing
criteria and/or methods of administration that have the effect of subjecting qualified individuals
with disabilities to discrimination on the basis of their disability, in violation of 28 C.F.R.
35.130(b)(3)(i).

78.     Lastly, by refusing to make the FDR Memorial accessible despite being requested
to do so in Plaintiffs' demand letter of August 4, 2016, Defendants have failed to make
reasonable modifications in their policies, practices, or procedures necessary to avoid
discrimination on the basis of disability. Accordingly, their conduct violates 28 C.F.R. §
35.130(b)(7).

79.     As a direct and proximate result of all these acts, Plaintiffs have been and
continue to be injured by virtue of their ongoing exclusion from visiting the FDR Memorial.

80.     Because Defendant agency's conduct constitutes an ongoing and continuous
violation of Title II of the ADA, Plaintiffs are entitled to declaratory and injunctive relief as well
as reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12181, ET SEQ.)**
**AGAINST THE CONSERVANCY**

81.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this
Complaint.

82.     Title III of the ADA prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

83.     The Conservancy is charged with operating and maintaining the FDR Memorial. There is no doubt that the FDR Memorial is a place of public accommodation within the meaning of Title III.  *See* 42 U.S.C. § 12181(7)(H); 28 C.F.R. § 36.104.

84.     Plaintiffs are likewise encompassed by Title III. Each individual Plaintiff is an individual with a disability within the meaning of the ADA and the regulations promulgated thereunder, *see* 28 C.F.R. Part 36.  In particular, each has a disability that substantially limits walking, an activity that clearly qualifies as a major life activity.  *See* 42 U.S.C. § 12102(2)(A); *see also* 28 C.F.R. § 36.104.

85.     Constituents of organizational Plaintiff BCID are individuals with disabilities within the meaning of the ADA and the regulations promulgated thereunder as well, *see* 28 C.F.R. Part 36.  Thus, each has a disability that substantially limits a major life activity. *See* 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

86.     The Conservancy violates the above-cited Title III mandate in several distinct ways. First, its repeated and deliberate failure to safeguard access to the FDR Memorial as a whole discriminatorily excludes visitors with mobility disabilities. The Conservancy's actions accordingly amount "to a denial of the opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" it offers through "contractual, licensing or other arrangements." *See* 42 U.S.C. § 12182(b)(1)(A)(i).

87.     Second, such management of the FDR Memorial discriminates against each Plaintiff by failing to ensure that their opportunity to visit, explore and enjoy the FDR Memorial is equal to that afforded to able-bodied visitors.  *See* 42 U.S.C. § 12182(b)(1)(A)(ii).

88.     Lastly, the Conservancy discriminates against Plaintiffs by failing to modify its policies, procedures, and practices in a reasonable manner, even though such modifications are clearly necessary to ensure equal access for individuals with disabilities.  *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

89.     The Conservancy's Title III violations have been ongoing and continuous. Unless enjoined, Defendant will continue to violate Title III and will thereby inflict injuries and irreparable harm upon Plaintiffs. In particular, absent injunctive relief, Plaintiffs will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of the program and service Defendants provide in operating the FDR Memorial.

90.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs request relief as set forth below.

## THIRD CAUSE OF ACTION
## VIOLATION OF SECTION 504
## (29 U.S.C. § 794, ET SEQ.)
## AGAINST DEFENDANT NEW YORK STATE OFFICE OF PARKS, RECREATION AND HISTORIC PRESERVATION

91.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

92.     Section 504 of the Rehabilitation Act provides in pertinent part: "[N]o otherwise qualified individual with a disability  . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." *See* 29 U.S.C. § 794.

93.     The Plaintiffs, the board members and constituents of the organizational Plaintiff, and the class are otherwise qualified individuals with disabilities within the meaning of the statute in that they have disabilities which substantially limit one or more major life activities, such as walking. They are also qualified in that they have sought, or will seek, to visit the FDR Memorial.  *See* 29 U.S.C. § 705(20)(B) (referencing 42. U.S.C. § 12102); *see also* 28 C.F.R. § 39.103.

94.     Defendant is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504. Moreover, Defendant has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

95.     Defendant and its agents and employees have violated, and continue to violate, Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disabilities, to discrimination in access to the FDR Memorial.

96.     Under Section 504 and the implementing regulations, Defendants are obligated to make the FDR Memorial accessible as a whole to visitors with mobility disabilities. Their ongoing refusal to do so amounts to discriminatory exclusion of those visitors from the FDR Memorial.

97.     As a direct and proximate cause of the aforementioned acts, Plaintiffs have been and continue to be injured.

98.      Because Defendants' conduct constitutes an ongoing and continuous violation of Section 504, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs pursuant to 29 U.S.C § 794(a).

WHEREFORE, Plaintiffs pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**(N.Y. EXEC. LAW § 290 ET SEQ.)**
**(AGAINST ALL DEFENDANTS)**

99.      Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

100.      Under the NYS HRL, it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." *See* N.Y. Exec. Law § 296(2)(a).

101.      The term "place of public accommodation" encompasses "establishments dealing with goods or services of any kind," as well as "any public areas of any building or structure." *See* N.Y. Exec. Law § 296.9. This definition applies, moreover, "regardless of whether the owner or operator of such place is a state or local government entity or a private individual or entity." *Id.*

102.      The term "discriminatory practice" has two aspects. First, it involves "a refusal to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations." *See* N.Y. Exec. Law § 296.2(c)(i).

103.      Second, it entails "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would

21

fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in undue burden." *See* N.Y. Exec. Law § 296.2(c)(ii).

104.    By the conduct described above, Defendants have committed unlawful discriminatory practices against Plaintiffs and have violated each of the above cited provisions of the NYS HRL.

105.    Defendants' violation of the NYS HRL has been ongoing and continuous. Unless restrained from doing so, Defendants will continue to violate it, thereby inflicting injuries and irreparable harm upon Plaintiffs. In particular, unless enjoined, Plaintiffs will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of the program and service Defendants provide in operating the FDR Memorial.

106.    Because Defendants' discriminatory conduct is ongoing, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**(N.Y.C. ADMIN. CODE § 8-101 ET SEQ.)**
**(AGAINST ALL DEFENDANTS)**

107.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this Complaint.

108.    The NYC HRL has a "uniquely remedial" purpose. The construction provision of this law expressly provides that each section must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." *See* N.Y.C. Admin. Code § 8-130.

109.    Accordingly, both Defendants' conduct is subject to a much stricter standard under the NYC HRL than under state or federal law, and their liability under these provisions must be determined separately and independently from their liability under the disability provisions of other statutes alleged in this Complaint.

110.    N.Y.C. Admin. Code § 8-107(4)(a), provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . ." Persons include all "natural persons, proprietorship partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations [and] legal representatives . . . " *See* N.Y.C. Admin. Code § 8-102(1).

111.    Further, the term "place or provider of public accommodation" encompasses "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available."  *See* N.Y.C. Admin. Code § 8-102(9).

112.    As a public historic site frequented by numerous visitors, the FDR Memorial clearly constitutes a service, accommodation, advantage, or privilege that is offered to the general public within the meaning of N.Y.C. Admin. Code § 8-102(9).

113.    The New York State Office of Parks, Recreation and Historic Preservation and the Conservancy both act as "managers" of the FDR Memorial in their role as a state agency tasked with operating all parks and historic sites within the state of New York and a nonprofit

23

organization charged with operating and maintaining the FDR Memorial, respectively. Accordingly, Defendants are plainly "persons" within N.Y.C. Admin. Code § 8-102(1).

114.     Because the FDR Memorial as a whole is inaccessible to persons with mobility disabilities, both Defendants, in their role as managers of the FDR Memorial, violate N.Y.C. Admin. Code § 8-107(4)(a) by denying to persons with mobility disabilities access to a service, accommodation, privilege or advantage that is otherwise available to the general public.

115.     In addition, both defendants violate N.Y.C. Admin. Code § 8-107(15). This provision mandates that covered entities must "make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question, provided that the disability is known or should have been known by the covered entity." *See* NY.C. Admin. Code § 8-107(15). Because this provision applies to all entities that must comply with N.Y.C. Admin Code § 8-107, Defendants are bound by it.

116.     Defendants' refusal to eliminate the accessibility barriers described above constitutes a clear failure to provide accommodation necessary to enable persons with mobility disabilities the opportunity to access the FDR Memorial on equal terms with able-bodied visitors. Defendants are doubtlessly aware, or should be aware, that persons with mobility disabilities constitute a portion of the population wishing to visit the FDR Memorial. Accordingly, Defendants' actions clearly violate the reasonable accommodation mandate of N.Y.C. Admin. Code § 8-107(15).

117.     As a direct and proximate result of Defendants' violations of the NYC HRL, Plaintiffs have been injured as set forth herein.

118.     Defendants' conduct constitutes an ongoing and continuous violation of the NYC HRL. Unless Defendants are enjoined from further violations, Plaintiffs will continue to suffer

injuries for which there is no adequate remedy at law. In particular, Plaintiffs will suffer irreparable harm in that they will continue to be discriminatorily excluded from accessing the FDR Memorial on equal terms with everyone else.  Plaintiffs are accordingly entitled to injunctive relief and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF

119.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this Complaint.

120.    Plaintiffs contend that Defendants have failed and are failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq*., Title III of the ADA, 42 U.S.C. § 12181 *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*., NYS HRL, N.Y. Exec. Law § 296 *et seq*., and the NYC HRL, N.Y.C. Admin. Code §8-101 *et seq*.

121.    Defendants disagree with Plaintiffs' contention.

122.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows, including but not limited to:

102.    A declaration that Defendants' conduct as alleged herein has violated and continues to violate Title II of the ADA, 42 U.S.C. § 12131 *et seq*., Title III of the ADA, 42 U.S.C. § 12181 *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*., NYS HRL, N.Y. Exec. Law § 296 *et seq*., and the NYC HRL, N.Y.C. Admin. Code §8-101 *et seq*.

103.    An order and judgment enjoining Defendants from violating each of the above-cited laws, and requiring Defendants to develop and implement a remedial plan to remedy such failures in order to provide equal access to the FDR Memorial

104.    Plaintiffs' reasonable attorneys' fees and costs; and,

105.    Such other and further relief as the Court deems just and proper.


Dated:  March 16, 2017
        New York, New York

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

Michelle Caiola (MC2110)
Jelena Kolic (JK1985)

DISABILITY RIGHTS ADVOCATES
675 Third Avenue, Suite 2216
New York, NY 10017
Tel:  (212) 644-8644
Fax:  (212) 644-8636
TTY:  (877) 603-4579

*Attorneys for Plaintiffs.*